Two minutes is when you should wind down, and the red light comes on. We ask you to cease unless you're answering a question from the court. We also appreciate record excerpts when those are appropriate. We only have one case this morning, as it turns out, and that is number 2440231 Doe v. Ferguson. So we'll hear first from Mr. Brandt. May it please the court, Tom Brandt for Dr. Holly Ferguson, superintendent of Prosper ISD, and Ms. Annemarie Hamrick, the former transportation director at Prosper ISD. Before you start, remind us of the claims that are remaining. This is here on interlocutory appeal. Remind us of the claims that are remaining other than this claim against the two appellants. The claim . . . there's a claim remaining against the school district.  But that is not before us. Well, of course not, but . . . Yes. But it's . . . So that's the only one? Yeah. I believe that's correct. My focus has been on the two individuals, so . . . but that is my understanding is . . .  Okay. I believe the court should reverse the trial court and render judgment in favor of the individual defendants because the district court erred when it found that mere possession of video and anomalous GPS tracking data was sufficient factual basis to deny qualified immunity. Is there any . . . and I've read the complaint or whichever iteration it is. Is there any express allegation that there was any duty on the part of the appellants by school regulation or state law or anything else to check these videos on some periodic basis? No. And in fact, if you look at the sweep of the pleadings from the original complaint to the plaintiff's response brief, it begins with saying there was no checking of it and there was no duty, but what you have then is you have something that sounds in negligence but not in a substantive due process. But from the beginning, the original complaint, and I'll give you the record reference there, but the original complaint, pages 136 and 137, says that the footage clearly was never checked. The footage was never reviewed. That was the original complaint. It was superseded by the second admitted complaint. But then going forward all the way to the brief before the court, the court, what you hear from the appellees is page 20 of their brief. Appellees do not know whether appellants actually reviewed the video surveillance before appellees reported the abuse. So before the mother reported the abuse, they have no facts that suggest that Ferguson or Hamrick had reviewed the video. Again, this is record page 297, paragraph 21 of the second amended complaint. Regardless of whether the defendants bothered to look at the videos, the videos were in defendant's continuous possession throughout the months of the abuse and placed defendants on, they say, actual notice, which is not true because you do not have actual notice under the Doe v. Taylor ISD. A person has to learn of the abuse, learn of facts that point plainly to abuse. First of all, the anomalous GPS data does not plainly point to anything except that somebody is doing something off course and turning the machine off. It can lead to any number of things. Well, that itself is at least suspicious, wouldn't you agree? It is suspicious. Is there a good faith explanation you could offer for why a bus driver with children would turn off the GPS? No. But the point I'm trying to make is that the GPS, if it were reviewed, which it was not, there's no allegation that the GPS data was reviewed, but if it were reviewed, it would point plainly to only suspicious general activity like what the heck are you doing, sir? Why are you turning this off? Why are you deviating from your course? It would lead to an investigation of that activity itself, but it wouldn't point plainly to sexual abuse. It would be one of any... It would point to something bad. Something... We don't know which. We don't... Yes, but under the rubric of Doe versus Taylor ISD, which by the way may not have survived Iqbal, and we want to preserve that point, but under Doe versus Taylor ISD, it has to be that the individual public official learned of facts that pointed plainly to the abuse. So, here you... At what point do we get to willful blindness? I mean, there's also allegations in the complaint about several minutes spent between the bus driver and these two children, these two girls, in the presence, this is during drop-off, so in the presence of administrators and teachers. Yes, and that has been abandoned on appeal. There were four bases that the district court used, but only two bases that the police are pursuing on appeal. That's the video and the GPS data. What you're referring to is at the drop-off, so the allegation is that some administrators saw some two-minute delays of one of the children getting off of the bus. The complaint says five minutes, but... Five minutes. Either way. Okay. So, what there is... First of all, that's been abandoned, but second of all, if it weren't abandoned, it would still be the fact that there are no facts that tie Ferguson or Hamrick to those persons who were there at the drop-off. What they do is they speculate. They say, there were some teachers at the drop-off. Would you read, though, the teachers and administrators who were there? I realize that I don't think they're identified in the complaint, but let's just stipulate that they were identified. Would they be entitled to QI, or would you agree that that's enough to overcome QI? Well... At least at this, we're at the MTD stage. Okay. In this hypothetical person I don't represent, but the individuals there at the drop-off, if they met the criteria under Taylor, and they learned of facts, this five-minute hold, they learned of facts... Right. You're the administrator, you're at the drop-off, and you're seeing this very strange behavior, and you do nothing.  And something ought to have been done by that individual to look into that, but the five-minute delay would not... Your point is not to deny that they would be accountable. Your point is, your clients had no knowledge of any of this. Yes. There's no evidence whatsoever, no allegation whatsoever in the record that Ferguson or Hamrick had reports from teachers at the drop-off, who said, hey, this is going on, you need to look into it, and they said, I don't care. No, that didn't happen. There was no allegation at all, and no factual basis in the record to say that the five-minute delay at the drop-off was tied, could be tied with knowledge learned of by... So I understand that. So I presume one reason that might not be in the complaint is they don't even know who these people are, so that, you know, I assume the other side would love to ask these individuals, did you report this higher up to your higher-ups, including Ferguson and the other person. You mentioned that the school district is still in the case below. Is that going to be the opportunity where they could find out who these people are? Presumably so. I think that with regard to our argument for Ferguson and Hamrick saying that they had no subjective knowledge, it could affect the defense of the school district later on down the road if it's found that there were no pleadings of subjective knowledge, no one learned of, because then you would have to say, okay, against the school district in the litigation as it would go forward, there would have to be some tie to the policymakers in order to have the school district held liable. So just because there would be low-level individuals who may know about it and didn't report, it's sort of like Mr. Paniagua himself, he's doing something horrible, and unless it is knowledge by the school district policymakers who then say, we're okay with that, which would be a course of crime . . . Just for purposes of this recording of this oral argument, I'm correct, aren't I, that neither of the appellants were at the, quote, drop-off point? That is correct. Yes. So, I have a question about Doe and Iqbal when you . . . or, yeah, Doe v. Taylor and Iqbal, when you have a moment. I have a moment right now. All right. Is there any basis to distinguish the standard in Doe v. Taylor from the Eighth Amendment that was at issue in the Iqbal case? There certainly could be, but I believe that they ought not be distinguished in the sense that the majority in Ashcroft v. Iqbal stated and went through ancient history, a case from 1888 and forward, saying that we have never held vicarious liability for a public official, and that they affirmatively state that supervisory liability is a misnomer. And then, you know, the circumstances were factually different, but still it was bad acts alleged by subordinates, and then Ashcroft himself is sued for those bad acts. And the Supreme Court said, no, that's not going to fly. And then the dissent said, you have just . . . the majority has wiped out supervisory liability as a claim. So when you read those two together, you see that the majority was clear what they were doing, and the dissent said, yes, we're clear what you're doing, too, and yet Doe v. Taylor has somehow survived that. And I'm making the point that at the very least, it calls into question the validity of Doe v. Taylor in light of reading Iqbal. It needs to be . . . that needs to be addressed by the Court, because I think that there's serious question about that. Well, there's no express holding by the Supreme Court that Taylor is not a good law. That's true. There is no . . . there isn't. We follow our rule of orderliness. Correct. But the rule of orderliness, as I understand it, gives way to Supreme Court precedent. Direct holding, not conjecture. And not a dissent. The only reason I mention the dissent is because it reflects what the reasonable interpretation of the majority was. And the . . . Sometimes dissents are. Sometimes dissents are. That's true, but . . . I'm not disparaging anybody. That's . . . everybody's written dissents like that before. But oftentimes you'll read in the majority a footnote saying that . . . a response to the dissent. And there was none. There was no response to the dissent saying, hey, you got it wrong. If Doe is in good law . . . I'm sorry, if Taylor is in good law, we've been breaking the law for years. I'm just preserving the point in terms of the argument and also in terms of qualified immunity. But more to the point, if the . . . if you look at what the district court did, it applied . . . Wait, wait. So am I correct, then, you acknowledge that Doe is still good . . . Taylor is still good law. You're just preserving the point for possible further review. Well, I'm making the argument now that it's not. But recognizing that the court . . . I said you're preserving the point, so I just want to be clear about this. Yes, I don't want to waive the point. I want the court to rule on that point. And the district court did rule on that point and ruled against me on that. But what the district court did was ignored four words, learned of and pointing plainly to. Plainly to. Mostly learned of. The district court essentially said constructive knowledge is good enough because if you look at what . . . and it's on . . . I'll give you the record site to where the court said that. But first of all, in page record 897, you will see exactly where the district court said all it had to say about applying Doe versus Taylor in 897. And it said . . . what it said was that . . . let me see. I seem to have lost it. Okay, it talks about learning of in the test, but then there are two things that the district court says, that Ferguson and Hamrick were in actual possession of surveillance video and suspicious GPS data. Actual possession. Never says viewed the video. And then it says that the plaintiffs, the appellees, pled, and I'll say without any factual support, but pled that Ferguson and Hamrick were actually subjectively aware of the abuse but failed to act. That's a conclusory statement. There are no facts to support that. So you have two things that are combined and the district court says that's good enough. And it's not. The two things are an allegation of mere possession, but not access to the data. The GPS data or the video were not actually accessed by Ferguson or Hamrick until after the mother made the report. So there's no facts to support that. And then you just have a bald conclusory allegation of subjective knowledge. That's it. And on that basis alone, the district court then cited to an unreported federal appendix case that violates Iqbal and violates Carswell that says, oh, we should go forward with discovery because that's close enough. And it's not. There are not allegations of subject. They're not factually specific allegations about subjective knowledge. Learned of. You don't learn. Suppose on remand, I think we discussed earlier that these unidentified teachers, administrators at the drop off, on discovery, the district provides the names of these individuals. Suppose that these individuals then say, well, we did tell the principal and the superintendent. I assume that would then take care of the learned of element, right? I realize these aren't in the complaint I'm talking about. I'm hesitant to speculate on such a thing because this is hypothetical. This is not binding on you in any way, obviously, but certainly it's possible that they'll be identified and it's possible that if they're identified, they would then confirm that this had been reported. I believe, Judge Ho, what is useful about that question is that it does point to that there could be facts theoretically and they aren't here. OK, so in this case, there are no facts pled. But if you part of this is testing the limits of your theory, I assume it sounds like you would concede that if that were to happen, that would be a different fact pattern. You're saying it's just not been pled here. Yes, let's make it easier that the that the people that drop off saw abuse. Or saw what was not just saw a five minute delay, but but saw something that was clearly abusive. And then they reported it up. And then Hamrick, both Hamrick and Ferguson were fully briefed on that and did nothing. They would be in trouble under Taylor. There's no doubt about that. But that's not the facts here. And that's not the facts of the case. That's not the facts pled. There are no there. There's nothing of that sort in the case. So here we have. Oh, my time is out. I just realized it. I know you're enjoying yourself. Sorry. I like my job. You have for a bottle. OK, Mr. Sherry. Mr. Sherry, is there anything I'm sorry, go ahead and get ready on me, or I can hear you. Is there anything in the record? Because we're here just on the allegations in the Second Amendment complaint. But is there anything in the record, docket entries, anything indicating any pre-complaint investigation to develop the facts in this case vis-a-vis the school board or these appellants or anything else? I'm sorry, a pre-complaint? Yes, sir. Before you filed your complaint, I assume you filed it. Is there anything in the record indicating any attempts on the part of the lawyers for the plaintiffs to have developed some facts about this before they filed this complaint? Your Honor, I don't think our work product protected investigation into these facts is reflected anywhere in the record. Did you file a complaint? We did. When I say you, did you specifically individually file a complaint? I am a signatory to the Second Amendment complaint. I don't believe I am on that first one that was referenced. Your Honor, if I could briefly address Iqbal before turning to the matter of the sufficiency of the pleading. As Judge Jones was asking, is there a way to distinguish Iqbal and the holding in Iqbal that they're relying on from the case below? And the answer is yes. If the paragraph that the appellants are relying on Iqbal is looked at closely, it's clear that the court was talking about the plaintiff's Bivens claims for invidious discrimination under the First and Fifth Amendments in that section. And that paragraph says that in that case, supervisory liability must also be based upon the mens rea of purposeful discrimination. That's the state of mind required to state a First or Fifth Amendment claim of invidious discrimination, and the holding there was simply that allegations of knowledge and acquiescence by a superintendent person are insufficient. The actions by the superintendent person, the person who is being charged with supervisory responsibility, has to be that same level of culpability as the underlying constitutional violation. In the case of Iqbal, that would be purposeful discrimination. In the case here, the standard, the state of mind necessary to state a violation of a Fourteenth Amendment bodily integrity claim this court has held many times is deliberate indifference. So the question in this case is whether we have adequately pled facts giving rise to a reasonable inference of deliberate indifference. But that being the nature of what was discussed in this part of Iqbal, Your Honor, I don't think that the majority opinion itself can fairly be characterized either as outright eliminating supervisory liability in 1983 cases or muddying the waters in their phrase when it comes to the clarity of the established right that was stated in Doe. As Your Honor pointed out, Iqbal did not address Doe v. Taylor ISD, is the Doe that I mean. In particular, that's an en banc decision. It certainly hasn't been reversed. The comments by the dissent in Iqbal, I think I can only characterize as an overstatement of the majority's holding and one that this court has not followed in the many years since Iqbal affirming that it is sticking by its pre-Iqbal, quote, rigorous standards for establishing in 1983 liability. Regarding the allegations in the complaint, I think there's a bit of a disconnect between the way the appellants characterize what we have done and what the district court did and the way the complaint is actually pled. There is an allegation in the complaint that defendants Hamrick and Ferguson had subjective knowledge, personal actual knowledge of the abuse of the two plaintiff girls. That I agree. Allegation standing alone could be subject to criticism as a bare or conclusory allegation. No, it could be subject to criticism as a violation of Rule 11. If Your Honor, there were not a good faith basis based upon the reasonable investigation. Well, then why do you qualify that so much by saying even if they didn't personally view the videos? Well, because Your Honor, I mean, Rule 11 is the reason why. We have tried to be very candid in our briefing and in our pleading about this about what we don't know and can't find out without discovery. We have alleged in good faith, in my opinion, and consistently with Rule 11, actual knowledge based upon a constellation of facts. But the only facts are that the kids outcried to their mom. The mom went to the superintendent. The fellow got fired within 48 hours, never was around kids again. Those are the only allegations. And that had they looked, there were videos of 100 different routes being pursued every day by the buses. So respectfully, Your Honor, those are not our only allegations in the case. Well, tell me very specifically what are the other allegations because I didn't get much from your brief. Sure. One, we are not depending on the conduct of the school officials after the report by the parents. The circumstances that we are relying on to support the allegation of actual subjective knowledge are the policies necessary or the policies actually in place to have constant onboard surveillance on the buses and constant GPS surveillance of their location. The fact that this bus driver, according to the reports of Janie Doe 1 and 2, abused them daily on the bus, if that is the case. Daily abuse was captured on the videos that were there. The fact that the GPS data and video surveillance data were in the actual possession. The problem I have with that is so we're becoming a video connected society. And so I'm thinking of other cases in schools where they have videos in the stairwells because kids go and have sex or smoke marijuana or ingest drugs or do trade illicit things in the stairwells of schools. But unless the old word is panopticon, how many people can you have looking at all the videos that are taking place simultaneously in regard to any public or private institution? I appreciate your Honour's point. I certainly understand it as a common sense, real world concern. Well it's a big concern for qualified immunity too because how do you extrapolate from that or infer from that that this head of transportation and the superintendent somehow knew anything about one driver on one route? Because Your Honour, I think the question at this stage, which is the pleading stage, is whether we have met the Rule 8 standard and the Iqbal Twombly standard of plausibly pleading a right to relief. And what we have alleged there in general terms as Rule 9b permits for state of mind is actual knowledge by the two defendant appellants here and we added facts that are the basis for our inference of actual knowledge while trying to be as possible about the limitations on what we're able to investigate and know at this stage of the proceeding without discovery. I mean, yeah, well suppose in the Ashcroft case they had alleged candidly that John Ashcroft knew about what was going on. Would that have survived the Iqbal standard? No. For several reasons, Your Honour, I think Iqbal rejected exactly that argument but reasons that don't apply here mainly to do with the difference between the Doe v. Taylor ISD test versus... I don't know. Iqbal is pleadings, Doe v. Taylor is what the substantive standard is. So you still have to have fact pleadings. I agree, Your Honour, and I actually think if you compare our pleadings in this case to Twombly, which Iqbal follows, of course, it shows why we crossed the line. The Supreme Court characterized Twombly as close. What's your best case? Your Honour, I'm going to rely on the pleading standard. Yes, sir. Pleading standards... I wonder why your pleadings in this case satisfy Iqbal. Your Honour, the Shulteya case... The what? The Shulteya case. Shulti? Shulti, if that is the way that's... Well, whatever. Yes. Okay. That's pre-Doe v. Taylor, right? It's an old case. Shulteya is certainly... Well, don't worry about... Okay, I'll take... It's... Certainly pre-Iqbal. It's certainly pre-Iqbal, Your Honour, although I think this Court's case is even pre-Iqbal, had largely adopted a Twombly-Iqbal standard of rejecting bare conclusions and requiring some factual specificity to support a plausible inference. But Shulteya is a case that addresses the pleading requirements in the 1983 cases, and of the Morgan v. Swanson case, an en banc decision of this case, I would say again, and because both of those cases emphasize that this is still a Rule 8 pleading standard even in the context of 1983, and even in the context of assertions of qualified immunity. And again, Your Honour, if Twombly was close, where the only allegation to support an agreement was the fact of parallel action between two companies, I respectfully submit our pleading gets over that line. We don't have a bare allegation of knowledge. We have an allegation of knowledge based on everything we've been able to learn without the benefit of any discovery. And I think some of Judge Ho's questions to the appellants are quite pertinent on this point. If we get to discovery, and there are actually more claims remaining in the case than just the Title IX claim against the school, the District Court has dismissed without prejudice the 1983 claims against the school, and has dismissed without prejudice and permitted repleting of certain 1983 theories against defendants Hamrick and Ferguson as well. A third amended complaint has been filed. Nothing has happened in the District Court in terms of actions by the court since this notice of appeal was taken. Are there any claims pending against the school district at this time? Yes, sir. Yes, Your Honour. There is a live Title IX claim against the school district where dismissal is denied, and then there are two 1983 theories that were dismissed without prejudice, repled, and have not yet been ruled on, on a new motion. In answering Judge Jones, circling back, you said, you alleged they had actual knowledge, actual knowledge, but tell me what in your complaint supports actual knowledge, such as they had the tape, they had reviewed the tapes. You don't say that. So, what is the basis for your pleading, actual knowledge? Your Honour, it is the possession of evidence that shows the abuse, and I have to put it on one thing. That is the fact. Were you saying they had it in their desk? No. I'm saying they had, I'm going to stick to the pleading judge respectfully, we're saying they had actual possession. How many of these videos did they have a day, how many school buses were being videoed each day? I'm afraid it's a fact that's not in the record. Is opposing counsel correct that you're, for the purpose of this appeal, only focusing on the videos and you're not here about the three to five minutes at the drop-off? No, Your Honour, that's not correct. That wasn't a fact. I didn't think so. Those facts are all recited in our brief on appeal. The fact of the drop-off was also one that was specifically relied on by the district court. I still want to be candid about this. We don't know because we haven't been able to find out . . . We appreciate your being candid. We don't know. That's the normal basis, basic standard. Yes. We don't know because we haven't been able to find out who looked at the videos, whether these defendants looked at the videos. This happened several years ago, right? 2021. Yes, sir. Three years almost.  I don't remember how quickly you filed suit, but you're talking . . . I'm not discounting the tragedy of this one whit, but you were talking about parents in the lower grades in elementary school. They tend to know each other. They tend to know the teachers and the supervisors. They tend to know who's doing the pickup and the drop-off observations because they were dropping their little girls off a couple of times a week. They knew these people. They could have talked to those people and told their lawyers before you filed a rather vague complaint. We have spoken to other parents, Your Honor, and some of the allegations regarding . . . Well, there's some allegations about other parents, but it's not really whether other parents knew about this. It's about the knowledge that these two high-level supervisors had. I would agree with that, Your Honor. That's the issue today. Title IX may be a completely different ballgame. I'm sure Mr. Brandt knows that, but suppose we transport your anyone-can-allege knowledge as sufficient into the prison context where we get cases from prisoners all the time. I was mistreated by the nurses. The doctor didn't take care of my abscess, and therefore I suffered unduly, and it was a violation of the Eighth Amendment. By the way, the head of the prison had to know about this because there are videos of every visit to the infirmary. Your Honor, we have a circumstance in this case where there ought to be, based on the school's policy of video bus surveillance and my client's allegations about what happened to them on a daily basis, hundreds of videos depicting sexual abuse. Well, but in fairness, there is a difference between the duty to record and the duty to  I agree, Your Honor. I'm not sure you can get from record all the way to knowledge. I agree, Your Honor. The point I am trying to make, and maybe I have not made it clearly, is that we have a complaint, a Second Amendment complaint, that does contain a, it's general as Rule 9b permits, a statement of actual knowledge. That statement does not stand alone. There are other facts alleged in the complaint that provide the basis for us making that inference right now. What are those? The key one, Your Honor, is actual possession of videotape showing the abuse. That is the key one. But why do you assume that having the, that's what I'm not getting, is having lots and lots of videos, which is important for preserving for cases like this, in no way implies that you actually watched them prior to a complaint. It would frankly surprise me if they had watched them. They, the two defendants? Yes. Okay. I assume these are busy people who have other things to do than watch hours and hours of video. I assume they are busy people who have things to do. Right. So do you see why the leap to actual knowledge seems a bit Herculean? I disagree, Your Honor, that it is Herculean. I agree that there's a step. And again, this is a pre-discovery pleading question. What does a plaintiff have to do to back up an allegation of sexual assault? I mean, just as a practical matter, let's say I have a camera at my home. Well, there's security here. We have cameras, I'm sure, around the courthouse. I assume the security folks aren't watching every minute. They're recording it so that if something were to be reported to them, then they can go and watch it. Isn't that perfectly normal and a natural expectation? I think it is perfectly normal, Your Honor. In fact, if you consider the Sheltia allegations, Sheltie, pardon me, the Sheltie allegations, which I think are judicial admissions that were placed into the record, these videos were actually reviewed, at least some selection of them, by, quote, transportation personnel during a four- to six-week period during the school year. So there is a plaintiff admission of review by transportation personnel. Those would be the subordinates of Ms. Hamrick, specifically. And — I'm sorry, where is that in the record? That — Yeah, Your Honor. You're saying there's information in the record that these videos were, in fact, watched as part of normal protocol? Yes, Your Honor. It's record at 587 and record at 749. These are the additional, what they call them, Sheltie facts that the defendants alleged in connection with their request for a motion requiring a Rule 7a reply from the plaintiffs. So that is — You didn't change your allegations in your complaint? We did not. Those allegations that I just mentioned were contained in their motion to dismiss. We were past the point of being — We're dealing with your second amended complaint. And along that line, I've just checked the docket. I don't see where, when they file that motion to dismiss, y'all move for discovery before the district court. And we've got some precedent on the fact that, you know, when a motion to dismiss is filed, you're not necessarily entitled to discovery. But I don't see anything on your part to develop more facts in response and amend your complaint. So our response to the motions to dismiss and to the Sheltie portion of the motions to dismiss did request discovery. If the court was going to — You're not raising that on appeal? You're not saying that's why you shouldn't grant relief to the appellants because we didn't get discovery? That's not raised by you on appeal, is it? It's not, Your Honor, because it's — I don't think it has been raised by appellants on  You don't what? I don't believe that the district court's action or inaction in not granting a Sheltie reply was raised by the appellants on appeal. No, but I'm saying you as the plaintiffs could have said, well, we didn't have the discovery requested. You should allow us to go back and have discovery and then amend our complaint. You don't raise that here, so that's not relief we can grant you. I have not requested that relief here, Your Honor, unless the court — I find the appellant's opening brief on the subject of Sheltie to be somewhat confusing. It is cited passim, it is not cited once in the reply, it is unclear to me whether they have raised as an issue on appeal that the district court erred in not requiring a more definite Sheltie statement, and in that aspect, we have absolutely argued in the district court and on appeal that if one were to be required, we should be allowed discovery. I see my time is up. Thank you. Okay. Thank you, sir. Mr. Brandt. The concession that you heard was that there was no duty to view, there was no duty to view video, and it makes sense that there would not be a legal duty to do so. Although I thought I heard a record citation that I obviously need to follow up on that these in fact were reviewed. At least a sampling. What is being referred to is our Sheltie motion, that portion of the motion to dismiss where we cite to Sheltie, Sheltie of course said that if assertion of qualified immunity is detailed, it will often require a rule 7A reply to that detailed assertion. So we did that. And among those facts, we said that the video is reviewed only when there's an incident that causes it to need to be reviewed, saying, hey, there's a haystack, we think there's a needle in there, you got to go look. That's one. And the other one is just once a year, in a random fashion, the bus drivers will be reviewed and they'll pull some random video and see if they see anything, and that's it. So there was never anything in the record that indicated that these precise videos were reviewed and found. So what you have then is you go back to the Iqbal standard, which says determining when a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. And that is what I hear you doing as we're speaking today, and that is to say it is not common sense that in this world we have enough people, manpower, resources to watch all the video that's all being recorded. It's not used that way, never was. Common sense is that video is there to be accessed when it's needed. And in the complaint, you'll see, in the complaint, the plaintiffs say that on the Monday, remember the report was on a Saturday night, on the Monday morning, the Prosper ISD police pulled the video, that was their words, they pulled the video, reviewed it, and then sent it over the Prosper Police Department, right? That's what they say in their complaint. So that implies and infers the common sense notion that we don't watch all the videotape all the time. What we do is we preserve it and we access it when it's needed. When somebody comes to our attention and says, you need to know that there was a fight on the bus. Oh, really? Okay, let's go see that fight. I understand that, which is why I'm asking about the three to five minutes. You said that that was an issue that's abandoned on appeal. It sounds like you guys disagree on that. I believe it is abandoned because it wasn't briefed on appeal. It was abandoned in that sense. It's not affirmatively abandoned like saying we abandoned it. No, you said it was forfeited, not briefed. Forfeited, yes. Of course, we can affirm for any reason available, you're the appellant in this case. Yes. They didn't have to file a brief at all, is my only point. We can affirm for any reason that's supported by the record. You're fine, yes, exactly. But, on that point, there's simply not enough evidence there of connecting Ferguson and Hamrick to the drop-off as we've gone over before. The individuals who were there at the drop-off observing whatever they observed- I think they're saying, and this was my intuition, that they are waiting for discovery so that they can identify these people, depose them, and then find out if there was such notice to Ferguson. Yes, but Iqbal and this court in Carswell told us the same thing, and that is you have to first make it past the plausibility hurdle, the Twombly-Iqbal plausibility hurdle. I thought Carswell- And citing specific facts that would indicate that there was a subjective knowledge, that there was learned of, so you cannot just say, I want to go to discovery because I don't have a basis to- Just to spell this out, though, there are two steps here. Carswell, I appreciate what you're saying about Carswell, Carswell says you get discovery but only as relevant to QI. You don't get free-flowing discovery, just the QI piece, and there's a pleading issue. No, no. Carswell said you don't get discovery at all because that's what Iqbal said. That's what Carswell said. That's why I said there were two pieces. One is, is there sufficient pleading to trigger the discovery? Two, if there is discovery, it's limited to QI. It sounds like to me those are the two issues, whether there's a sufficient pleading, and then if so, the discovery question. Actually, two things. In my limited time, there was not sufficient pleadings, and even if there were, there's no case on point that says there was a duty to review video evidence and therefore a person in this position, a Ferguson-Hamrick, could be denied. You conceded earlier. No, there's no clearly established law that has put these individuals on notice that they could be charged with a substantive due process violation for failing to have reviewed all video ahead of time. My time's out. Thank you. All righty. Thank you very much. As I noted at the beginning, the court will stand in recess.